Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1584 | **DATE** | 10/30/2002 |
| **CASE TITLE** | FOR YOUR EASE ONLY, INC. vs. NATURAL SCIENCE INDUSTRIES, LTD. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER:  Because defendant has raised a substantial question regarding the validity of Plaintiff's '211 patent, this Court declines to adopt the magistrate judge's Report and Recommendation, and the motion for preliminary injunction is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | NOV 0 1 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 40 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DOCKETED
NOV 0 1 2002

| | |
|---|---|
| FOR YOUR EASE ONLY, INC., an Illinois Corporation, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 02 C 1584 |
| v. ) ) ) | Judge Guzman<br>Magistrate Judge Levin |
| NATURAL SCIENCE INDUSTRIES, LTD., a New York Corporation, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant, Natural Sciences Industries, Ltd., ("NSI"), has filed written objections to Magistrate Judge Levin's Report and Recommendation ("R & R") entered on June 12, 2002. In his R & R Magistrate Judge Levin considered a motion for preliminary injunction filed by the Plaintiff, For Your Ease Only, Inc., ("FYEO"), against Natural Science Industries, Inc., ("NSI") seeking equitable relief from an alleged infringement of its '211 patent. He recommended that this Court grant the injunction. For the reasons set forth below, this Court declines to adopt the R & R.

### I. BACKGROUND[1]

This matter arises out of NSI's alleged infringement of FYEO's U.S. Patent No. 6,325,211. The '211 patent covers a series of products in FYEO's Fill-A-Bowl® line. The Fill-A-Bowl® is a transparent decorative bowl consisting of a smaller inner bowl within a larger outer bowl with a hollow perimeter region between the two bowls. The hollow perimeter is divided into sections by a series of dividers. Because the bottom of

---

[1] NSI objects to many of the factual findings in the magistrate judge's R & R, but the following facts are undisputed.

1



the bowl is easily removable, the hollow region can be filled with decorative items (even perishable items, such as candy, dried flowers, freeze-dried vegetables, etc.), allowing the user to change the appearance of the bowl for different occasions.

Lori Greiner, President of FYEO, began selling her decorative bowls in early 2000 and applied for a patent on June 2, 2000. As a result, Ms. Greiner was issued a patent that is currently being re-examined and is not at issue in this case, U.S. Patent No. 6,253,918. The first patent did, however, allow Ms. Greiner to file a continuation application on January, 9, 2001, which resulted in the issuance of the '211 patent before this Court. Ms. Greiner later assigned the '211 patent to FYEO.

The Fill-A-Bowl® has enjoyed great success on QVC, reaching "key item" status and over 300,000 sales. In addition, Ms. Greiner has sold her line of products in retail stores, A.C. Moore & Crafts, in particular. Although the Fill-A-Bowl tested well at A.C. Moore, FYEO lost the contract to NSI and its less expensive BeautiFills Product line in April 2002. The BeautiFills line is very similar to the Fill- A-Bowl® Product line.

**Prosecution History**

NSI argues that it has raised a substantial question that the '211 patent is invalid because Ms. Greiner intentionally misled the Patent Office while prosecuting the patent. Specifically, NSI claims that Ms. Greiner withheld information regarding the prior art. It charges that Greiner did not properly disclose the Joly Marion bowl to the Patent Office. NSI further alleges that Greiner amended her patent claims in response to the patent Examiner's concerns, but the amended claims, while distinguishing the claimed Fill-A-Bowl structure from the prior art in the possession of the Examiner, did not in any way distinguish the Fill-A-Bowl from the Joly Marion bowl which Greiner had not fully

2

disclosed. Thus, NSI reasons that because Ms. Greiner had the Joly Marion bowl in her possession while she was amending her patent claims to differentiate her invention from the prior art in the Examiner's possession but not differentiating it from the Joly Marion bowl, her failure to disclose the bowl must have been intentional. Mem. Opp. to Pl.'s Mot. Prelim. Inj. At 4-5.

## DISCUSSION

When a motion for preliminary injunction is the subject of an R & R, the district court is required to conduct a *de novo* review of those portions of the magistrate judge's R & R to which specific written objections have been filed. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Nevertheless, *de novo* review does not require a *de novo* hearing; the district court is not required to conduct another hearing to review the magistrate judge's findings and credibility determinations. *See United States v. Raddatz*, 447 U.S. 667, 675 (1980); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995); *United States v. Severson*, 49 F.3d 268, 273 (7th Cir. 1995). Rather, the district court has discretion to "accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1)(C) (2002). If the district court is satisfied with the magistrate judge's findings and recommendations, it may in its discretion treat those findings and recommendations as its own. *Raddatz*, 447 U.S. at 675.

**Standard for Preliminary Injunction**

The law of the Federal Circuit Court of Appeals governs the issuance of preliminary injunctions for patent infringement under 35 U.S.C. § 283. *See Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1986). Under the law of the Federal Circuit, the decision to grant a preliminary injunction is within the sound

3

discretion of the district court. *See Amazon.com, Inc., v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). The moving party has the burden of showing four factors: "(1) a reasonable likelihood of success on the merits, (2) irreparable harm if an injunction is not granted, (3) a balance of hardships tipping in its favor, and (4) the injunction's favorable impact on the public interest." *Id.* No single factor is a sufficient condition for an injunction, but the first two factors—a reasonable likelihood of success and irreparable harm—are necessary conditions. *See id.*

**FYEO's Likelihood of Success on the Merits**

Of the four preliminary injunction factors, NSI objects only to the magistrate judge's finding that FYEO has a reasonable likelihood of success on the merits. (*See* Def.'s Objections at 1.) In order to succeed on the merits at trial, FYEO will have to prove that NSI infringed upon the '211 patent, *and* the patent must withstand NSI's challenges to its validity. *See Amazon.com, Inc.*, 239 F.3d at 1350. Therefore, for the purposes of this motion, if NSI raises a substantial question regarding infringement or validity of the '211 patent—that is, if it raises a defense that FYEO cannot prove "lacks substantial merit"—then the preliminary injunction should not issue. *Amazon.com, Inc.*, 239 F.3d at 1350-51 (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)).

NSI does not object to the magistrate judge's finding that its BeautiFills line likely infringes upon the '211 patent. (*See* Def.'s Objections at 1.) Rather, NSI objects to the finding that its invalidity defense lacks substantial merit. NSI raises two main invalidity challenges: the first alleges that the '211 patent is obvious, the second alleges

4

that Ms. Greiner failed to disclose prior art and otherwise acted improperly before the PTO.

Although FYEO's '211 patent is presumed valid, NSI is entitled to raise an invalidity defense based on any of the conditions for patentability in Part II of Title 35. *See* 35 U.S.C. § 282 (2002). Here, NSI argues that the '211 patent is invalid because "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2002). To resolve a question of obviousness, "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent area resolved." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). The Court must also look at "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc." because "[a]s indicia of obviousness or nonobviousness, these inquiries may have relevancy." *Id.* at 18. Where, as in this case, the subject matter of the patent and the prior art are easily understandable, a determination of the level of ordinary skill in the art is unnecessary. *See Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983).

NSI's obviousness defense is two-part. First, it argues that the claims of the '211 patent are fully met by the Joly Marion bowl, except for the addition of a removable bottom plate, which, under the Manual of Patent Examining Procedure, Section 2144.04, is *prima facie* an obvious modification unless FYEO establishes the "criticality" of the removability limitation. Second, even if the removability limitation is critical, NSI

5

argues, the prior art shows motivation or suggestion to combine the Joly Marion bowl with other prior art references to include the removabilty limitation.

In support of its first argument, NSI cites the Manual of Patent Examining Procedure Section 2144.04, which allows an examiner to make an obviousness determination based only on "sufficiently similar" caselaw.[2] But, "[i]f the applicant has demonstrated the criticality of a specific limitation, it would not be appropriate to rely solely on case law as the rationale to support an obviousness rejection." *Id.* Section 2144.04 provides several examples of "common practices which the court has held normally require only ordinary skill in the art," one of which is "making separable." MPEP § 2144.04(V)(C). The case cited in subsection (V)(C) is *In re Dulberg*, 289 F.2d 522, 129 USPQ 348 (C.C.P.A. 1961). In *Dulberg*, the court considered a lipstick holder that was fully met by the Peterson patent except for a removable cap (which allowed access to the bottom end of the tube for easier removal and replacement of lipstick). *See id.* 289 F.2d at 523. The court upheld the rejection of the patent, holding that "if it were considered desirable for any reason to obtain access to the end of Peterson's holder to which the cap is applied, it would be obvious to make the cap removable for that purpose."[3] *Id.*

On the one hand, the Fill-A-Bowl® products are distinguishable from the lipstick holder in *Dulberg*. A lipstick holder with a removable cap remains a mere lipstick holder. A Joly Marion bowl with a removable bottom plate remains a bowl, but it is also a craft

---

[2] The MPEP is not binding on this Court, but it is entitled to judicial notice as long as it does not conflict with the statutes and regulations interpreted therein. *See Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1439 (Fed. Cir. 1984).

[3] The *Dulberg* court held that "[n]o specific prior art teaching would be necessary to show this operation." *Dulberg*, 289 F.2d at 523. Nevertheless, for good measure the court also combined Peterson and a patent structurally similar to Peterson (the Noble patent), which contained a removable cap. *Id.*

6

project: it allows the user to engage in a creative activity. Therefore, while the removable cap in *Dulberg* is, in the language of MPEP Section 2144.04, a "routine expedient," the removable bottom plate of the Fill-A-Bowl is a critical limitation.[4]

Similarly, the claims of the '211 patent are distinguishable from the claims considered in *Dulberg*, which were directed only toward the structure of the proposed invention, not the method of removing the lipstick (which was to push the old lipstick out with "a pencil or similar instrument"). *Dulberg*, 289 F.2d at 523. In contrast, the '211 patent is directed "to a decorative container . . . and to a method for decorating a container." (*See* U.S. Patent No. 6,325,211 B1, Field of the Invention.) For example, Claims 1, 26 and 29 describe containers "for displaying items in an internal hollow region," and Claim 21 describes "a wand configured to assist with positioning items in the internal cavities." Unlike the claims in *Dulberg*, therefore, the claims of the '211 patent involve method, not only a simple structural change.

On the other hand, *Dulberg* does state that "if it were considered desirable for any reason to obtain access to the end of Peterson's holder to which the cap is applied, it would be obvious to make the cap removable for that purpose." And, although FYEO correctly argues that *Dulberg* does not "espouse a general principle that removability

---

[4] NSI insists that a limitation is only "critical" if it "leads to a new result which would not be expected by those of ordinary skill in the art." (Def.'s Objections (quoting *In re Reni*, 419 F.2d 922, 925 (C.C.P.A. 1970)). This Court agrees with FYEO that NSI's definition of "criticality" is limited to cases "where patentability is predicated upon a change in a condition of a prior art process, as a change in concentration or the like . . . ." *In re Reni*, 419 F.2d at 925; *see also In re Dillon*, 919 F.2d 688, 692-94 (Fed. Cir. 1990) (denying patent, in part, because of the absence of unexpected results in the amount of fuel additive necessary to reduce particulate emissions). In contrast, a "critical limitation" is customarily understood as "one essential either to the operativeness of the invention or to the patentability of the claims." *Storchheim v. Daugherty*, 410 F.2d 1393, 1396, 56 C.C.P.A. 1147, 1150 (C.C.P.A. 1969); *see also* Black's Law Dictionary (7th ed. 1999) (same definition). The removable bottom plate is essential to the operativeness of the Fill-A-Bowl® line and, if patentable, to its patentability.

cannot make an invention," it does at least bring into question the nonobviousness of the '211 patent.

Nevertheless, because the removability limitation is critical to the '211 patent, it would not be appropriate, under MPEP 2144.04, to rely solely on *Dulberg* for an obviousness rejection. Therefore, *Dulberg* alone does not raise a *substantial* question regarding the validity of the '211 patent. The prior art, however, does raise a substantial question.

NSI argues that the following patents could be combined with the Joly Marion bowl to render the Fill-A-Bowl obvious:

1. "The Yellin Bowl": The bowl is intended for users to decorate by filling cavities between an inner and outer bowl with sand. The bowl is distinguishable from the Fill-A-Bowl because the decorative cavity is left open at the top to allow access to the cavity for decoration. *See* U.S. Patent No. 3992811. (issued Nov. 23, 1976). However, NSI contends that the Yellin bowl provides motivation to include access to the inner cavities of the Joly Marion bowl because it teaches the person of ordinary skill in the art the advantage of a changeable appearance in a decorative bowl with inner and outer cavities. From that lesson, NSI argues it is a short—and obvious—trip to the removable bottom plate of the Fill-A-Bowl.

2. "The Kimura Mug": The mug is decorative and has one fillable cavity. The material in the decorative cavity can be changed. "It is an object of the

present invention to provide a vessel which makes possible the easy and free exchange of decoration." *See* U.S. Patent No. 5553735 (issued Sept. 10, 1996); Exhibit 3 of the Declaration of Jay Bondell. The inner cavity can be filled with two dimensional objects like pictures, or "Three-dimensional objects such as dried flowers, small stones, pieces of metal, glass, ceramics, plastic, wood, leaves and so on." Similar to the bottom plate of the Fill-A-Bowl, the Kimura mug uses a threaded bottom closure.

3. "The Kadjevich Mug": The mug is decorative and fillable. It features an inner container and an outer container. The user can remove the inner container, place photographs or other decorative material on a cardboard placard that fits into the cavity, and then seal the mug by a twisting action that attaches a stud on the inner container to a receptacle on the bottom of the outer container. The decoration placed in the cavity can be changed. *See* U.S. Patent No. 5040317 (issued Aug. 20, 1991); Exhibit 1 of the Declaration of Jay Bondell.

4. "The Yeh Mug": The mug also contains a removable inner container that allows the user to decorate the cavity between the inner and outer containers. Unlike the Kimura and Kadjevich mugs, the Yeh mug is non-plastic, but the decorative interior cannot be changed. *See* U.S. Patent No. 5894948 (issued Apr. 20, 1999); Exhibit 2 of the Declaration of Jay Bondell.

Contrary to the magistrate judge's R & R, the prior art cited by NSI is in the same field as the Fill-A-Bowl line: decorative, changeable containers. Because the prior art references are sufficiently related to one another and to a related and common art, two questions determine whether it is appropriate to combine them to support an obviousness

9

rejection: (1) "whether a combination of the teachings of all or any of the references would have suggested (expressly or by implication) the possibility of achieving further improvement by combining such teachings along the line of the invention in suit," and (2) "whether the claimed invention achieved more than a combination which any or all of the prior art references suggested, expressly or by reasonable implication." *In re Sernaker*, 702 F.2d 989, 994 (Fed. Cir. 1983).

The Fill-A-Bowl is essentially a combination of different elements of the prior art. The Fill-A-Bowl patent's first claim is a "decorative container for displaying items in internal cavities." The Joly Marion bowl and all four patents cited above accomplish the same goal. The Joly Marion bowl is nearly identical structurally to the Fill-A-Bowl as embodied in the '211 patent. The only exception is the inability to change the content of the Joly Marion bowl's internal cavities, which is accomplished in the Fill-A-Bowl by the removable bottom plate. However, the prior art provides motivation for such improvement; the Yellin bowl demonstrates the advantages of a decorative bowl with fillable internal cavities that can be changed. Thus, the only claimed innovation over the prior art of decorative bowls with changeable, internal cavities is the Fill-A-Bowl's particular method of accessing the internal cavities. Rather than an open cavity at the top, as in the Yellin bowl, the Fill-A-Bowl patent claims openings at the bottom that are closed with a plate.

NSI has raised a valid question of whether the particular innovation of the Fill-A-Bowl patent, a removable bottom plate allowing access to the internal cavities, is non-obvious. Both the Kimura and the Kadjevich mugs feature internal cavities that are closed by fixtures at the bottom of the mugs. The Kimura mug even contains a "closure

piece" similar to that on the Fill-A-Bowl. The benefits of decorative, fillable vessels, and the benefits of sealing the interior of such vessels at the bottom place in question the non-obviousness of the combination of these features embodied in the Fill-A-Bowl patent.

FYEO cites *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001), which warns against a hindsight analysis when determining the obviousness of a patent where the prior art is relatively simple. *McGinley* is of no avail to the plaintiff because the issue in that case is readily distinguishable from the issue here presented. *McGinley* involved a patent for a baseball with specific "finger placement indicia" designed to teach students how to throw different pitches. The patented baseball was very similar to another baseball patented 30 years earlier. *Id.* at 1343. However, the question presented in the *McGinley* case is far different than that presented here. In *McGinley*, the Court reviewed the trial court's granting a judgment as of matter law after the jury had returned its verdict. The jury had decided that the patent was non-obvious, and the judge set the verdict aside. Thus, the question was whether no reasonable jury could have decided that the patent was obvious. The Federal Circuit ruled that though the similarities between the prior art and the patent were "striking," it could not say that no reasonable jury could find the innovation to be non-obvious. *Id.* at 1345. It was within this context that the *McGinley* Court offered its hindsight analysis warning. The situation in this case is easily distinguishable because the question is not whether no reasonable jury could decide that the '211 Fill-A-Bowl patent is non-obvious, but whether a jury is likely to decide that the '211 patent is non-obvious. For the reasons outlined above, the Court finds that the arguments against the '211 patent's non-

obviousness are strong enough to seriously question the jury's likelihood of deciding that the patent is non-obvious.

The plaintiff argues that objective factors of nonobviousness, primarily the commercial success of its patent and NSI's imitation of its patent are indicative of the patent's non-obviousness. However, these secondary indicators of obviousness "cannot overcome the strong evidence of obviousness." *Brown & Williamson Tobacco Co. v. Phillip Morris Inc.*, 229 F.3d 1120, 1131 (Fed. Cir. 2000). Although the Fill-A-Bowl has enjoyed considerable market success, and there is strong evidence that NSI willfully imitated the bowl, the ultimate determination of obviousness is based on a totality of the evidence. *Id.* at 1131. Furthermore, of the secondary indicators listed in *Graham*, FYEO has cited only the market success of the Fill-A-Bowl, and has presented no evidence of "long felt but unsolved needs," or the "failure of others." In this case, the objections to the patent's nonobviousness based on the prior art are potentially strong enough to outbalance the secondary consideration of the Fill-A-Bowl's market success.

Despite holding that NSI has presented a question about the validity of FYEO's patent sufficient to deny the motion for the preliminary injunction, the Court also addresses NSI's assertion that the '211 patent is invalid because of Ms. Greiner's prosecutorial misconduct. The Court finds NSI's allegation in this regard unlikely to succeed on the merits. For a patent to be invalidated due to inequitable conduct during prosecution, it must be on a showing of (1) material prior art, (2) knowledge chargeable to the patent applicant of the prior art and its materiality, and (3) the applicant's failure to disclose the prior art to the patent office with an intent to mislead. *Fox Industries Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801 (Fed. Cir. 1990). NSI has not

presented sufficient evidence of an intent to mislead on the part of Ms. Greiner. In fact, Ms. Greiner disclosed a document describing the Joly Marion bowl titled, "Description of Previously Marketed Product on Sale Prior to Invention by the Applicant" to the Patent Office, and also disclosed a color brochure with a photograph of the Joly Marion Bowl from which it is clear that the Joly Marion bowl was very similar structurally to the claimed invention. Pl.'s Rep. Mem. In Sup. of Mot. for Prelim. Inj. at 10. Given the extent of Ms. Greiner's disclosure, it is unlikely that NSI's argument that her failure to disclose even more was with intent to deceive the Patent Examiner will succeed.

## CONCLUSION

Because NSI has raised a substantial question regarding the validity of FYEO's '211 patent, this Court declines to adopt the magistrate judge's R & R, and the motion for preliminary injunction is denied.

So Ordered.

Entered: 10/30/02

Ronald A. Guzman
United States Judge