# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1584 | **DATE** | 9/4/2003 |
| **CASE TITLE** | FOR YOUR EASE ONLY, INC. vs. NATURAL SCIENCE INDUSTRIES, LTD. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants NSI's motion for summary judgment of invalidity and FYEO's motion for summary judgment dismissal of NSI's inequitable conduct defense. [48-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 15 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 65 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOR YOUR EASE ONLY, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATURAL SCIENCE INDUSTRIES, ) <br> LTD., ) <br> ) <br> Defendant. ) <br> ) | Judge Ronald A. Guzmán <br><br> Civil Action No. 02 C 1584 |

SEP 1 0 2003

## MEMORANDUM OPINION AND ORDER

For Your Ease Only, Inc. ("FYEO") filed a complaint against Natural Science Industries, Ltd. ("NSI") alleging patent infringement. FYEO claims that NSI violated its United States Patent No. 6,325,211 ("'211 Patent") when it sold refillable decorative containers divided into multiple cavities. (Compl. ¶6.) Before the court is defendant's motion for summary judgment of invalidity and plaintiff's motion for summary judgment dismissal of defendant's inequitable conduct defense. For the reasons provided in this Memorandum Opinion and Order, the Court grants both motions.

## FACTS

This controversy stems from NSI's alleged infringement of FYEO's '211 patent, which discloses a decorative container for displaying items in internal cavities. (Compl. Ex. A). See Figure 1. This container consists of transparent inner and outer containers. (*Id.*) The key feature of this container is that it contains a removable plate, which provides access to the internal cavities, allowing the user to change or rearrange the contents of the objects inside the internal cavities anytime he wishes. (*Id.*) This container also comes with a wand, which allows the user to easily place items inside of the inner cavities. (*Id.*)

Lori Greiner first conceived of the idea of a refillable bowl in 1997. (Def. Mem. Summ. J. Invalidity, at 1). While in Florida, she purchased a salad bowl, the Joly Marion bowl, which displays items in internal cavities. (Def. 56.1 Invalidity, at ¶5.) See Figure 2. This bowl is very similar to the FILL-A-BOWL, as it contains transparent inner and outer containers with a plurality of dividers. (*Id.*, at ¶¶5-20.) Because the compartment of this bowl is sealed, however, there is no way to change the contents of the items in the cavities. (Pl.'s Supplemental 56.1 Invalidity, at ¶30.) Ms. Greiner thought it would be "cool if a woman could put what ever she wanted inside the bowl and be able to change it as often as she liked." (Decl. Doscotch Mem. Opp'n Summ. J. Invalidity Ex. 14, at ¶18.) After having this idea, she designed and developed the FILL-A-BOWL ®. (*Id.*) Ms. Greiner launched this product in the latter part of 1999. (*Id.*, at ¶ 9.)

Ms. Greiner applied for a patent in June of 2000. (*Id.*, at ¶23). Her initial application is currently being reexamined and is not at issue in this case. (*Id.*) She filed a continuation application in January 2001, which resulted in the issuance of the '211 patent on Dec. 4, 2001. (Compl. Ex. A.) Ms. Greiner subsequently assigned this patent to FYEO, a company she founded with her husband in order to sell her decorative containers. (Compl., at ¶¶ 4-5.)

It is undisputed that The FILL-A-BOWL® product has been quite successful. In three years, FYEO generated over 6.5 million in sales. (Pl.'s Supplemental 56.1, at ¶ 12.) In addition, Ms. Greiner's product has earned several benchmarks of success on QVC, including elevation to "Power Promo" and "Key Item" status. (*Id.*, at ¶ 13, ¶17.)

Five years passed between the development of the Joly Marion bowl and Ms. Greiner's invention of the FILL-A-BOWL®. (*Id.*, at ¶10.) During this time, Joly Marion did not alter the design of its bowl so that its contents could be changed (*Id.*, at ¶¶10-11.)

NSI introduced its own line of refillable decorative containers, the Beautifills® line, in January 2002. (*Id.*, at ¶21.) NSI introduced this line after conducting some market research of the houseware market in 2000. (*Id.*, at ¶1.) NSI's Vice President of

2

Research and Development, John Hanwell, had also seen the Joly Marion bowl in the late 1990s, which was sealed on the bottom. (*Id.*, at ¶5.) However, Mr. Hanwell did not think to incorporate a removability feature into this sealed bowl at the time he first saw the bowl. (*Id.*, at ¶8.) Mr. Hanwell thought people would not like a bowl that could not be refilled, and that customers would prefer a product in which the user could decide how to fill it. (*Id.*, at ¶35.) As a result, the Beautifills® line, like the FILL-A-BOWL®, contains a removable plate on the bottom, allowing the user to change the contents. However, NSI did not provide a wand with this bowl. (*Decl. Doscotch Mem. Opp'n Summ. J. Invalidity Ex. 12*, at 43.) NSI's marketing touts the Beautifills® line as unique and innovative. (Pl.'s Supplemental 56.1 Invalidity, at ¶25).

In addition to Beautifills®, another product, the DecoBowl, also appears to be a copy of the FILL-A-BOWL®. (Pl.'s Supplemental 56.1 Invalidity, at ¶36.) The DecoBowl contains all the features of the FILL-A-BOWL®, including a removable cover that allows customers to change the contents of the inner cavities of the bowl. (*Id.*)

Ms. Greiner discovered that NSI was marketing a refillable bowl in early 2002. (*Decl. Doscotch Mem. Opp'n Summ. J. Invalidity* Ex. 14, at ¶ 38). Ms. Greiner informed NSI that they were marketing a product which she believed infringed on her patent in February, 2002, but FYEO and NSI were unable to resolve this controversy outside of court. (*Id.*, at ¶¶ 45-57.) As a result, FYEO filed suit against NSI in April 2002. (*Id.*, at ¶ 58). NSI responded by alleging that the '211 patent was invalid due to obviousness and that Ms. Greiner had committed inequitable conduct before the Patent and Trademark Office ("PTO"). (Decl. Doscotch Mot. Summ. J. Inequitable Conduct Defense Ex. 11, at ¶¶ 17-18). FYEO moved for a preliminary injunction, enjoining NSI from marketing its Beautifills® line, but this injunction was denied in October, 2002. *(Id.* Ex. 13). NSI now moves for summary judgment claiming that Ms. Greiner's invention would have been obvious to one skilled in the art, while FYEO moves for summary judgment dismissal of NSI's inequitable conduct defense.

## DISCUSSION

### I. The Summary Judgment Standard

Summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party opposing a motion for summary judgment must do more than raise some doubt as to the existence of a fact; instead, the nonmovant must produce evidence sufficient to require submission of an issue to a jury. *Avia Group Int'l v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). However, all the evidence must be viewed in a light most favorable to the party opposing the motion, and all reasonable inferences must be drawn in the nonmovant's favor. *Id.* Summary Judgment is as appropriate in a patent case as in any other. *Id.* at 1561.

### II. Obviousness

A patent is obvious if "the differences between the subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. §103(a) (West 2003). A patent is presumed valid. 35 U.S.C. §282 (West 2003). When a party moves for summary judgment due to obviousness, the party bears the burden of establishing by clear and convincing evidence based on undisputed facts that the invention was obvious. *Quad Environmental Technologies Corp. v. Union Sanitary District*, 946 F.2d 870, 871 (Fed. Cir. 1991). In addition, when the PTO considers the prior art references, as is likely the case here[1], the burden to prove that the invention is obvious is even higher. *Hewlett-Packard Co. v. Bausch & Lomb*

---

[1] NSI contends that the PTO did not properly apply the teachings of the Joly Marion bowl because it never affirmatively cited it. (*See* Def. Reply Mem. Mot. Summ. J. Invalidity at 8). However, the PTO did refer to Ms. Greiner's Description of Previously Marketed Product On Sale Prior to Invention by Applicant, which describes the Joly Marion bowl. See section III, which discusses Ms. Greiner's alleged inequitable conduct.

*Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990). However, the presumption is rebuttable, and if it is clear to the court that the invention would have been obvious in light of the prior art, it must hold the patent invalid. *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 780 (Fed. Cir. 1983).

Patent validity is a question of law based upon factual inquiries. *Graham v. John Deere Co. of Kansas*, 383 U.S.1, 17 (1966). A court must determine: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. *Id.* at 17-18. In addition, a court must evaluate "secondary considerations," or "objective evidence" of nonobviousness, such as commercial success, long felt but unsolved need for the invention, the failure of others, and copying of the claimed invention. *Id.* at 17, *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986).

### A. Scope and Content of the Prior Art

The claim language at issue in this case is:

> A decorative container for displaying items in an internal cavities, the container compromising: an inner container nested within an outer container thereby defining a hollow region therebetween, wherein the outer container is symmetric about a vertical axis; a plurality of dividers located within the hollow region to divide the hollow region into a plurality of inner cavities, each divider substantially the hollow region between the inner and outer containers; and a removable member configured to enable access to the hollow region upon removal.

(Compl. Ex. A, at 6.)

It is undisputed that the first two of these claims, a decorative container with an inner container nesting within an outer container, and a decorative container with a plurality of dividers, are present in the Joly Marion Bowl. The Joly Marion Bowl is a decorative bowl with transparent inner and outer partitions. (*See* Decl. Dosc. Mem. Opp'n Summ. J. Invalidity Ex. 13.) The space between these partitions is filled with decorative materials and a disc is glued on at the bottom, which prevents the user from changing the objects. (*Id.*, at ¶ 5.) Moreover, it contains a series of dividers that divide the bowl into distinct sections, with a different decorative item in each segment. Therefore, the Joly

5

Marion Bowl is essentially identical to the FYEO bowl, except that the bottom piece is glued on, instead of being removable. (*Id.*, at ¶11.) Thus, the key difference between the '211 patent and the Jolly Marion bowl is the third claim, which discloses a removable bottom piece, allowing users to change the contents whenever they desire, instead of being forced to retain the contents originally provided by the bowl.

In addition to the Joly Marion bowl, a number of other prior art were referenced to the PTO, such as Yellin, Kimura, Kadjevich, Yeh, Wells, Grendahl, and Fine. All of these prior art references disclose the desirability of decorative containers with a transparent outer section. (*See* Decl. Bondell Mot. Summ. J. Invalidity Ex. 2-9.) The objects range from bowls (The Joly Marion bowl), to a square sand-painting device (Yellin) to mugs (Kimura, Kadjevich, Yeh, Fine), storage containers (Wells), and rotary picture frames (Grendahl). Thus, containers with transparent inner and outer walls are common in the prior art.

In addition, Kimura discloses the desirability of providing a bottom access opening to a decorative container. Kimura discloses a vessel for holding liquid, with inner and outer shells, a transparent outer shell, and a cylindrical cavity between the shells capable of storing decorative objects. (*Id.* Ex. 3, at F 00628.) This vessel provides a bottom access opening which allows the users to change the decorative objects. Claim 5 of Kimura discloses "A vessel ... with a bottom opening in the outer shell, and wherein said removable cavity closing means includes a removable bottom closure with means for attachment over the bottom of the outer shell, to close the cavity." (*Id.*, at F 00639.) The key feature of the '211 patent, that it provides a bottom access opening that allows the user to change the decorative contents inside the cavities, is therefore present in the prior art.[2] Accordingly, this Court holds that the scope and content of the prior art weigh in

---

[2] The listed prior art does not disclose the use of a wand to position items inside the internal cavities. However, FYEO does not contest the fact that the manufacturers of the Joly Marion bowl use wands to place decorative items into their bowls. (*See* Pl.'s Resp. 56.1 Invalidity ¶23.) FYEO does not seriously argue that the disclosure of a wand alone is sufficient to prove nonobviousness in this case.

favor of a finding of obviousness.

## B. Differences between the Prior Art and the Claims at Issue

The key difference between the prior art and the claims at issue in this case is that none of the prior art combines a decorative bowl with a removable bottom feature. The Joly Marion bowl is identical to the FYEO bowl, except that the Joly Marion bowl provides no way for the user to change the contents of the interior cavities. The '211 patent adds a removable plate at the bottom, so that the user can change the contents of the interior cavities. None of the patents discussed in the previous section specifically disclose a decorative bowl with a removable bottom plate. Therefore, the issue is whether combining the Joly Marion bowl with the prior art references would have been obvious to one skilled in the art.

A court cannot conclude that an invention is obvious simply because it consists of a combination of previous art references. *Smiths Industries Medical Systems, Inc. v. Vital Signs, Inc.*, 183 F.3D 1347, 1356 (Fed. Cir. 1999). Instead, the relevant inquiry is "whether there is a reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Id.* The reason, suggestion, or motivation to combine the art can be found in (1) the prior art references themselves; (2) the knowledge of those of ordinary skill in the art that certain references or disclosures in those references are of special interest or importance in the field; or (3) the nature of the problem to be solved, leading inventors to look to references relating to possible solutions to that problem. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 665 (Fed. Cir. 2000). This determination is made at the time the disputed invention is made, not in hindsight. *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001).

In this case, the suggestion to combine the references is present in the prior art. The fact the Joly Marion bowl did not provide a means of changing the contents of the bowl was limiting. Both Mr. Hanwell and Ms. Greiner's own observations show that

7

most people found the Joly Marion bowl to be limiting without being able to change its contents. The nature of the problem, described by the '211 patent itself as "a need for arrangements especially situated to hold three-dimensional decorative objects within the walls of the container that can be easily changed" would lead one skilled in the art to look to references that would provide a solution to this problem. Therefore, the next logical step for one skilled in the art would be to combine the bowl with an access opening at the bottom, as taught by Kimura, to produce a decorative bowl whose inner contents could be changed. As a result, the difference between the prior art and the claims at issue also weighs in favor of a finding of obviousness.

Relying on *In re Sernaker*, 702 F.2d 989, FYEO argues that the prior art references must teach or suggest combining them in the specific manner claimed by the invention. (Pl. Mem Opp'n Mot. Summ. J. Invalidity 17). FYEO claims that the references do not explicitly suggest combining the bottom access opening of the Kimura and Kadjevich mugs with the Joly Marion bowl. (*Id.* at 18). In *In re Sernaker*, the Court of Appeals for the Federal Circuit discussed another case, *In re Imperato*, in which the court held that the combination in question was not suggested by the prior art references because the invention achieved an unexpected result. *Id.* at 995. The court noted that combining art references did not make an invention obvious unless something in the prior art references suggested that an advantage would be obtained from combining their teachings. *Id.* at 995-996.

In the instant case, the advantage obtained by combining the Joly Marion bowl with a bottom access opening was not unexpected. Instead, the result, a refillable, decorative bowl, provides exactly the expected advantage over the Joly Marion bowl – allowing the user to change the contents of the decorative items. In addition, the prior art references suggest that an advantage can be obtained by combining their teachings. As noted above, the inability of a user to refill the Joly Marion bowl was limiting and would lead one skilled in the art to look for solutions in other art references, such as Kimura.

Moreover, in order to sustain a finding of obviousness it is only necessary that the inventor applied "knowledge clearly present in the prior art." *In re Sernaker*, 702 F.2d 989 at 995 (quoting *In re Sheckler*, 438 F.2d 999, 1001 (Cust. & Pat. App. 1971)). The inventor need not directly incorporate the features of one reference into another reference to produce the invention. *In re* Bozek, 426 F.2d 1385, 1390 (CCPA 1969). Instead, the test for obviousness is whether the combination of references makes the invention obvious to one of ordinary skill in the art. *Id.* In this case, the knowledge to provide a removable piece is present in the prior art – specifically Kimura and Kadjevich. One familiar with all the art references would know to apply this knowledge to the Joly Marion bowl. Therefore, Ms. Greiner's combination of this feature with the Joly Marion bowl would have been obvious to one skilled in the art.

FYEO also argues that Ms. Greiner's invention was not obvious because the invention was not obvious to NSI's designer, Mr. Hanwell, and the creator of the Joly Marion bowl, Dimitri Joly. (Pl. Mem Opp'n Mot. Summ. J. Invalidity, at 5.) It first points to portions of the deposition of Mr. Hanwell, which appear to suggest that he did not conceive of the idea of the Beautifills® upon first viewing the Joly Marion bowl and other prior art, and that he thought the Ms. Greiner's invention to be a great innovation. (*Id.* at 5.) This is a mischaracterization of Mr. Hanwell's testimony, however, as the deposition itself does not actually support these conclusions. With regard to the '211 patent, Mr. Hanwell stated that "there was no invention here. It was nothing new." (Decl. Dosc. Mem. Opp'n Summ. J. Invalidity Ex. 12, at 64). Mr. Hanwell also stated that he felt the only difference between the prior art and the FILL-A-BOWL® was "glue." (*Id.*, at 76). Thus, Mr. Hanwell did not believe that the inventiveness of Ms. Greiner's bowl was "great"; rather he thought the concept of selling refillable bowls was a good one. In addition, an invention need not be obvious immediately upon viewing the prior art. If this were the case, virtually no invention would be considered to be obvious, and FYEO has cited no authority in support of this assertion. Although Mr. Hanwell may not

9

have conceived of the Beautifills® line immediately upon seeing the Joly Marion Bowl, the suggestion and motivation to add a removable bottom plate to the Joly Marion Bowl is present in the prior art.

FYEO also contends that the invention was not obvious to the creator of the Joly Marion Bowl, Dimitri Joly. Once again, this is a mischaracterization of the evidence. At no point in his declaration does Mr. Joly state that he never conceived of the idea of adding a removable bottom plate to his bowl. (*See* Decl. Doscotch Mem. Opp'n Summ. J. Invalidity Ex. 13.) Nor does Mr. Joly state that he believed Ms. Greiner's invention to be an improvement over his own bowl. (*Id.*) Instead, Mr. Joly states that he believes the '211 patent to be identical to the Joly Marion bowl, except that the patent does not show the cover can be glued on. (*Id.*, at ¶11).

Finally, FYEO contends that NSI's marketing of the Beautifills® line shows that it felt the invention was not obvious. (Pl. Mem. Opp'n Mot. Summ. J. Invalidity, at 9-10). Although NSI's marketing does state that its products are "unique" (Decl. Doscotch Mem. Opp'n Summ. J. Invalidity Ex. 20, at 2) this does not mean that the products are not obvious. It simply does not make sense to use a company's marketing tools, which try to promote a company's products, as a way of determining whether an invention is obvious to one skilled in the art. The marketing is geared toward a lay-person, not to those skilled in the art.

FYEO has not shown the existence of any facts supporting the conclusion that no "reason, suggestion, or motivation" exists in the prior art to combine the bottom access opening taught by Kimura and Kadjevich with the Joly Marion decorative bowl, while NSI has shown by clear and convincing evidence that this innovation is obvious in light of the prior art. As a result, the Court holds that the differences between the prior art and the claims at issue also weigh in favor of granting summary judgment in favor of NSI.

### C. Level of Skill in the Pertinent Art

Although generally a court must evaluate the level of skill in the pertinent art

when determining whether an invention is obvious, no factual determination of the level of skill in the art is necessary when the subject matter of the invention and prior art are easily understandable. *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983). In this case, Ms. Greiner's invention is easily understandable to a lay person and FYEO does not dispute the fact that the requisite level of skill in the art is low. (*See* Pl. Mem. Opp'n Summ. J. Invalidity, at 5). The Court therefore holds that no factual findings regarding the level of skill in the '211 patent are necessary.

### D. Secondary Considerations

FYEO relies heavily on secondary considerations to support its claim that the '211 patent is not obvious. FYEO argues that there was a long felt need for the invention, that others failed to develop the invention, that Ms. Greiner's invention enjoyed great commercial success, and that her invention was copied by others. (Pl. Mem. Opp'n Summ. J. Invalidity, at 25-29). FYEO argues that these facts are sufficient to defeat a motion for summary judgment of obviousness.

Secondary considerations, when present, must be considered by a court. *A.B. Chance Co.*, 234 F.3d at 667. The reason for evaluating secondary considerations is that they can "provide objective evidence of how the patented device is viewed in the marketplace, by those directly interested in the product." *Demarco Corp. v. Von Langsforff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988). Evidence of secondary considerations is not always sufficient to establish nonobviousness, however. *See Ryko Mfg Co. v. Nu-Star, Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991). Instead, the secondary considerations may be entitled to more or less weight, depending on their nature and relationship to the merits of the invention. *Ashland Oil, Inc. v. Delta Resins & Refractories*, 776 F.2d 281, 306, *cert denied*, 475 U.S. 1017.

FYEO first argues that there was a long-felt need in the marketplace for Ms. Greiner's invention. (Pl. Mem. Opp'n Summ. J. Invalidity, at 3-4). It relies on NSI's "House Wares & Kitchen Wares Market Analysis" report, which indicates that

11

"Housewares are no longer functional. It [sic] speaks to the way people live and the way they want to be portrayed. People want to find items that suit their specific personality." (Decl. Doscotch Mem. Opp'n Summ. J. Invalidity Ex. 1, at 1012). This text does not establish a long felt need for specifically refillable bowls, however. It simply shows that there is a need in the marketplace generally for innovative houseware products. In order to show that a long-felt need for the innovation existed, FYEO must show that a recognized problem existed in the art for a long period of time without solution. *See* Manual of Patent Examining Procedure §716.04. FYEO has not provided any evidence showing that the problem, producing a refillable bowl, was recognized by the marketplace. Therefore, FYEO has not produced any evidence of a long-felt need for refillable bowls.

FYEO also contends that others failed where Ms. Greiner succeeded. (Pl. Mem. Opp'n Summ. J. Invalidity, at 28-29.) Once again, though, FYEO has not provided any facts that support this position. Relying on the Declaration of Dimitri Joly, FYEO argues that Dimitri Joly failed to develop a decorative bowl with a removable bottom plate. (*Id.*, at 28.) Nothing in Mr. Joly's declaration shows that he ever considered redesigning the bowl so that its contents could be replaced. (*See* Decl. Doscotch Mem. Opp'n Summ. J. Invalidity Ex. 13.) FYEO has not shown that Mr. Joly ever desired to create a refillable bowl or that he failed to do so. As a result, FYEO has not shown the existence of the failure of others.

FYEO also contends that Mr. Hanwell failed to make the invention. (Pl. Mem. Opp'n Summ. J. Invalidity, at 28-29). FYEO argues that Mr. Hanwell did not conceive of the idea of a refillable bowl until after Ms. Greiner began selling her products on QVC. Nothing in Mr. Hanwell's deposition suggests that he had any difficulty combining a bowl with a removable bottom feature, however. Moreover, even if FYEO is correct that Mr. Hanwell did not conceive of the refillable bowl until after Ms. Greiner created the FILL-A-BOWL®, this would not mean that he had failed to develop the invention, just

that he had not worked on the invention during that period of time. Therefore, Mr. Hanwell's delay in conceiving the Beautifills® line does not establish the failure of others.

FYEO has been able to show that the FILL-A-BOWL® enjoyed commercial success and that a reasonable inference can be drawn that Ms. Greiner's invention was copied. FYEO's strongest argument in favor of nonobviousness is commercial success. FYEO has produced numerous evidence showing that its product is commercially successful. From 1999 to 2002, all of the products in the FILL-A-BOWL® line totaled $6,755,830 in sales. (Decl. Greiner Mot. Opp'n Summ. J. Invalidity Ex. 1). In addition, Ms. Greiner enjoyed great success selling the product on QVC, including having the product designated as a "KEY ITEM," given only to QVC's most successful items. (*Id.* Ex. 8, at ¶31). Finally, the FILL-A-BOWL® was enjoying some success in the retail market, as both AC Moore and Michael's Arts and Crafts decided to carry the FILL-A-BOWL ® products in 2001. (*Id.*, at ¶35). The commercial success that FYEO has enjoyed weighs in favor of a finding of nonobviousness.

NSI argues that other reasons could exist for the commercial success enjoyed by the FILL-A-BOWL®, such as the fact that its products sell for less than $20.00, while the Joly Marion bowl costs more than $100. (Def. Reply Mem. Mot. Summ. J. Invalidity, at 10). It is true that in order to establish secondary considerations based upon commercial success that FYEO must show a "nexus" between the invention and the commercial success – in other words, that the commercial success is directly attributable to the invention and not caused by other factors. *See Demarco Corp.*, 851 F.2d at 1392. If NSI were correct, it would have established a factual dispute, which would mean that the Court would need to deny its motion and allow the case to proceed to trial. It is the judgment of the Court, however, that the commercial success alone is not sufficient to establish nonobviousness in the specific facts of this case. Although the Court accepts as true FYEO's contention that the FILL-A-BOWL® enjoyed great commercial success,

13

commercial success is only one factor out of many that this Court must evaluate when determining whether the invention is obvious. *See Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1475, 1483 (Fed. Cir. 1997). Because the innovations of the '211 patent are so clearly taught by the prior art and because FYEO has not shown the existence of other important secondary considerations, such as long-felt need and failure of others, this Court holds that the commercial success of the FILL-A-BOWL® product line does not, by itself, establish that the claims of the '211 patent are unobvious.

FYEO argues that Ms. Greiner's invention was copied by NSI and by another bowl, the DecoBowl. (Pl. Mem. Opp'n Summ. J. Invalidity, at 29-30). It is not clear from the facts whether NSI and the DecoBowl copied the FILL-A-BOWL®. FYEO contends that an inference can be drawn that NSI copied the bowl, (*Id.*, at 29) while NSI claims that it conceived of the idea of the bowl on its own and was only aware of the FYEO bowl later on. (*See* Decl. Doscotch Mem. Opp'n Mot. Summ. J. Invalidity Ex. 12.) With regard to the DecoBowl, FYEO has shown the existence of the bowl, ( *See* Decl. Dosc. Supp. Mem. Resp. Mot. Summ. J. Invalidity Ex. 17), but has not provided any other evidence that it was copied.

Although the possibility that the Beautifills® line and the DecoBowl may have been copied from FYEO is a factor weighing in favor of a finding of nonobviousness, this Court holds that even if Beautifills® and the DecoBowl are copies of the FILL-A-BOWL®, that the secondary considerations are not sufficient to support a finding of nonobviousness in this case. Despite the fact that FYEO's evidence of commercial success and copying weighs in favor of holding the patent valid, FYEO has not established any evidence of long-felt need or failure of others. As a result, the secondary considerations as a whole neither weigh in favor of or against holding that the invention was obvious. Because the primary considerations -- the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of skill in the art weigh so heavily in favor of finding the invention obvious, this Court holds that the

14

claims of the '211 patent are obvious and therefore invalid as a matter of law.

## II. Inequitable Conduct

In addition to arguing that the '211 patent is invalid, NSI also argues that Ms. Greiner committed inequitable conduct before the PTO. (Answer Am. Compl. and Coutercl., at ¶18.) NSI argues that Ms. Greiner committed inequitable conduct by failing to provide a photograph of the Joly Marion Bowl, by instead providing a brochure entitled "A Hint of Summer, Cool it Down" *Ampersand,* and by describing the Joly Marion Bowl as "similar" the to the *Ampersand* brochure. (*See* Def. Mem. Opp'n Pl's Mot. Summ. J. Dismissal of Def. Inequitable Conduct Defense.)

Inequitable conduct consists of two elements: (1) Failure to disclose material information or submission of false material information; (2) with an intent to deceive. *Kingsdown Medical Consultants v. Hollister, Inc.* 863 F.2d 867, 872 (Fed. Cir. 1988). Both of these elements must be proven by clear and convincing evidence. *Id.*

In this case, NSI has failed to provide clear and convincing evidence of both failure to disclose material information or intent to deceive. NSI has not shown why Ms. Greiner's description of the *Ampersand* bowl as "similar to the Joly Marion bowl was misleading. The bowls are, in fact, quite similar. In addition, Ms. Greiner provided a "Description of Previously Marketed Product On Sale Prior to Invention by Applicant." (*Id.* Ex. 8, at 4.) In that description, Ms. Greiner noted that the bowl contained "internal cavities" and that "no access opening was provided ... to allow access to the internal cavities." (Pl.'s Statement of Material Facts ¶ 7.) In addition, Ms. Greiner stated that the brochure did a better job than the photograph of depicting the bowl (Decl. Doscotch Mot. Summ. J. Dismissal of Def. Inequitable Conduct Defense Ex. 7, at ¶8), a point which NSI does not contest. Moreover, the PTO specifically considered both the *Ampersand* brochure and the description of the previously marketed product. (*Id.* Ex. 8.) Because NSI has not produced any evidence showing that Ms. Greiner withheld material references from the PTO, NSI has not shown the existence of a genuine issue of material

15

fact with respect to the first element of the inequitable conduct defense.

NSI has also provided no evidence that Ms. Greiner intended to deceive the PTO. NSI contends that an intent to deceive can be inferred from the fact that she did not provide a photo of the Jolly Marion Bowl. As shown above, however, Ms. Greiner did in fact adequately disclose the prior art references to the PTO by providing the brochure and the description of the previously marketed bowl. Because Ms. Greiner's disclosures were adequate, an intent on her part to deceive cannot be reasonably inferred from the facts. Therefore, the Court grants FYEO's motion for summary judgment dismissal of NSI's inequitable Conduct defense.

## CONCLUSION

For the reasons set forth above, the Court grants NSI's motion for Summary Judgment of invalidity and FYEO's motion for Summary Judgment Dismissal of NSI's inequitable conduct defense.

SO ORDERED      ENTERED: 9/4/05

HON. RONALD A. GUZMAN
United States Judge